```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                              :
HERBERT EVANS,                :
                              :
          Petitioner,         :    Civ. No. 18-3505 (NLH)
                              :
     v.                       :    OPINION
                              :
WARDEN DAVID ORTIZ,           :
                              :
          Respondent.         :
_____ :
```

APPEARANCES:

Herbert Evans, No. 39557-007
FCI Ft. Dix
Inmate Mail/Parcels
East: P.O. Box 2000
Ft. Dix, NJ 08640
     Petitioner Pro se

Anne B. Taylor
Office of the United States Attorney
401 Market St.
P.O. Box 2098
Camden, NJ 08101
     Counsel for Respondent

HILLMAN, District Judge

Petitioner Herbert Evans ("Petitioner"), a prisoner presently incarcerated at the Federal Correctional Institution at Fort Dix in Fort Dix, New Jersey, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition").  ECF No. 1.  Petitioner alleges that he is being held wrongfully after being arrested for a violation of his supervised release because the U.S. Parole Commission does not have jurisdiction over him and the Parole Commission's

imposition of a term of imprisonment and further supervised release for the violation is unlawful. See ECF No. 1. By order of Court, Respondent filed an Answer to the Petition (the "Answer"). ECF No. 13. The Petition is now ripe for disposition. For the reasons stated below, the Petition will be denied.

## I. BACKGROUND

In 2007, Petitioner was convicted after a jury trial of aggravated assault while armed in violation of D.C. Code §§ 22-404.01, 22-4502. See Evans v. United States, 12 A.3d 1 (D.C. App. 2011). On August 24, 2007, the Superior Court for the District of Columbia sentenced Petitioner to eighty-four months in prison with five years of supervised release. Id. See ECF No. 1 at 6-7. Petitioner completed his prison sentence on October 28, 2012, and began his five-year period of supervised release. See ECF No. 13 at 3. About six weeks later, on December 5, 2012, the Parole Commission issued a Notice of Action requiring Petitioner to participate in a drug aftercare program, a mental health program, and an anger management program. See id.

While Petitioner was still on supervised release, a warrant was issued for his arrest on July 8, 2016 for (1) the use of dangerous and habit-forming drugs; (2) a violation of special

2

condition of drug aftercare; (3) the failure to submit to drug testing; and (4) assault. See id. On July 12, 2016, Petitioner was arrested pursuant to that warrant. See id.

The Parole Commission held Petitioner's revocation hearing on September 14, 2016. See id. The hearing examiner recommended that the Parole Commission find that Petitioner had violated his supervised release by: (1) using dangerous and habit forming drugs; (2) violating the special condition of his supervised release to attend mental health treatment as directed by his supervising officer; (3) failing to submit to drug testing as directed; and (4) committing assault. Id. The Parole Commission issued a Notice of Action in which it revoked Petitioner's supervised release and ordered him to serve thirty-six months in prison followed by twenty-four months of supervised release. Id. See ECF No. 1 at 6. The Notice of Action stated that the Parole Commission determined imprisonment for an amount of time above the otherwise applicable guideline range was appropriate because Petitioner is:

> [A] more serious risk than indicated by the guidelines in that [Petitioner has] committed a new assault while on supervision for Aggravated Assault While Armed, in which [Petitioner] stabbed [his] victim multiple time in the back. Additionally, [Petitioner has] exhibited documented instances of aggressive, disruptive, hostile, and/or threatening behavior during this period of supervision and [Petitioner has] other prior convictions for Aggravated Assault and Assault. The

3

> Commission finds this pattern of violent behavior and
> aggressive behavior creates an unacceptable risk to
> public safety and [Petitioner's] continued
> incarceration, above the guidelines, is necessary to
> protect the community.

ECF No. 13 at 4-5.

Petitioner appealed the Parole Commission's decision on January 13, 2017. See id. at 5. The Parole Commission's National Appeals Board reviewed Petitioner's administrative appeal and denied the appeal on April 7, 2017. See id.

Petitioner filed this Petition in the U.S. District Court for the District of Columbia on November 16, 2017. ECF No. 1. Respondent moved to transfer the action to this District because Petitioner is imprisoned at FCI Fort Dix, ECF No. 8, and that motion was granted on February 20, 2018, ECF No. 9. Respondent filed an Answer. ECF No. 13. Petitioner has filed various letters that address some arguments in reply. ECF Nos. 14, 15, 17.

**II. DISCUSSION**

A petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 is the proper way in which a federal prisoner may challenge parole proceedings, including the revocation of parole and the execution of the sentence post-revocation. See Callwood v. Enos, 230 F.3d 627, 632 (3d Cir. 2000); United States v. Kennedy, 851 F.2d 689, 690 (3d Cir. 1988) ("A challenge to the

4

Parole Commission's execution of a sentence is properly raised in a habeas petition under 28 U.S.C.A. § 2241."); Alston v. Stewart, No. 17-cv-1339, 2018 WL 1069360, at *6 (D. Md. Feb. 27, 2018) ("Numerous courts have treated § 2241 as the appropriate vehicle for individuals who, like Petitioner, are D.C. Code offenders challenging the decision of the USPC to revoke their supervised release or parole."); Johnson v. Samuels, No. 06-cv-2233, 2007 WL 1575076, at *1-2 (D.N.J. May 30, 2007) (§ 2241 petition proper way in which a federal prisoner convicted pursuant to the D.C. Code may challenge the revocation of parole); Noble v. United States Parole Comm'n, 887 F. Supp. 11, 12 (D.D.C. 1995). Therefore, this Petition is properly brought under 28 U.S.C. § 2241.

In the Petition, the Petitioner raises three grounds for relief. First, Petitioner argues that the Parole Commission lacks authority over him and thus he is being held wrongfully. See ECF No. 1 at 14. As part of this argument, Petitioner contends that the Parole Commission is violating separation of powers by usurping the Superior Court's authority to sentence him. Second, Petitioner argues that because forty-four months of his sixty-month period of supervised release had elapsed before the Parole Commission issued a warrant for his arrest and revoked his supervised release, the Parole Commission could only

5

impose "15-16 months" of imprisonment, i.e. the remainder of his original term of supervised release. See ECF No. 1 at 6. Finally, Petitioner references the Ex Post Facto clause and intimates that the term of imprisonment and further supervised release he received after his supervised release was revoked somehow violates this clause. See id. Petitioner does not challenge the basis for the revocation of his parole.

Petitioner was sentenced, imprisoned, and on supervised release under the District of Columbia Code. The Parole Commission "assumed the responsibility of making parole release decisions for all eligible District of Columbia Code felony offenders on August 5, 1998 pursuant to [the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective Aug. 5, 1998), D.C. Code § 24-1231,] and D.C. Code § 24-209." Muhammad v. Mendez, 200 F. Supp. 2d 466, 469–70 (M.D. Pa. 2002). "Effective August 5, 2000, the Commission was given the remaining responsibilities of the former D.C. Board of Parole regarding the supervision of parolees and the revocation of parole for release violations." Id. at 470, n.4 (citing § 11231(a)(2) of the Act, codified at D.C. Code § 24-1231(a)(2)). The Revitalization Act gives the Parole Commission the same authority over the terms, conditions, and revocation of

supervised release as is vested in the U.S. District Courts by 18 U.S.C. § 3583. See D.C. Code § 24-403.01(b)(6). The Bureau of Prisons thus assumed the responsibility of incarcerating offenders convicted in the Superior Court for the District of Columbia. See Public Law No. 105-33, §§ 1100-1723, 111 Stat. 251, 712-87 (1997).

Petitioner's commission of the offense, his conviction, and his sentencing all occurred at times when a District of Columbia "offender shall be subject to the authority of the United States Parole Commission." D.C. Code § 24-133(c)(2). See also D.C. Code § 403.01(b)(6) ("Offenders on supervised release shall be subject to the authority of the United States Parole Commission until completion of the term of supervised release.). Under the terms of the National Capital Revitalization and Self-Government Improvement Act of 1997, the Parole Commission has the authority to determine the conditions of supervised release for Petitioner and to decide whether his supervised release should be revoked for violation of his conditions of release. See also Zanini v. Williamson, No. 06-0982, 2008 WL 4861512 (M.D. Pa. Oct. 30, 2008) (discussing the Parole Commission's authority over District of Columbia offenders subject to supervised release). Thus, there is no merit to Petitioner's argument that the Parole Commission somehow lacks jurisdiction or authority over him or

7

the terms and revocation of his supervised release.

Petitioner also argues that the delegation of such authority to the Parole Commission infringes on the separation of powers in that the Parole Commission has usurped the sentencing function of the Superior Court of the District of Columbia. Petitioner is incorrect. The Parole Commission's exercise of authority to revoke Petitioner's supervised release and impose terms of imprisonment and further supervised release does not violate the separation of powers doctrine. The Parole Commission's actions are authorized by the Revitalization Act and D.C. Code, as discussed above. This authority confers upon the Parole Commission the power to supervise Petitioner while on release, revoke Petitioner's supervised release, and impose upon him terms of imprisonment or supervised release following revocation. See <u>Taylor v. U.S. Parole Comm'n</u>, 860 F. Supp. 2d 13, 16 (D.D.C. 2012) (the Parole Commission "has the authority both to revoke supervised release and return a releasee to custody, as well as to impose a new term of supervised release following his release from custody.").

The Parole Commission possesses authority over the execution of a judicially imposed sentence including parole and supervised release, and its proceedings are separate administrative matters at which the offender "[d]oes not possess

8

the same rights as a criminal defendant at trial" and are not part of the original criminal proceedings. See Smallwood v. U.S. Parole Comm'n, 777 F. Supp. 2d 150 (D.D.C. 2011) (quoting Maddox v. Elzie, 238 F.3d 437, 445 (D.C. Cir. 2001) and citing Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). The Parole Commission's exercise of its authority over persons such as Petitioner does not usurp the judicial function or offend the doctrine of separation of powers. See, e.g., Rahim v. U.S. Parole Comm'n, 77 F. Supp. 3d 140, 145 (D.D.C. 2015); Morrison v. U.S. Parole Comm'n, 68 F. Supp. 3d 92, 94–95 (D.D.C. 2014); Taylor, 860 F. Supp. 2d at 16; Smallwood, 777 F. Supp. 2d at 150 (collecting cases); Leach v. U.S. Parole Comm'n, 552 F. Supp. 2d 250, 251 (D.D.C. 2007); Taylor v. Hollingsworth, No. 07-cv-970, 2007 WL 5614097, at *2 (D. Md. Oct. 9, 2007), aff'd 280 F. App'x 294 (4th Cir. 2008) ("The Commission does not exercise a judicial function and its decisions do not violate the separation of powers.").

As to Petitioner's next argument regarding the length of his term of imprisonment and period of supervised release resulting from his violation, the terms imposed by the Parole Commission conform to the laws applicable to Petitioner. Under the D.C. Code, the sentence for a violation of supervised release depends on the underlying conviction. All offenses

9

classified as class A felonies permit the Parole Commission to impose up to five years of imprisonment at the first revocation of supervised release.  See D.C. Code § 24-403.01(b)(7); see also 28 C.F.R. § 2.219(a)(1).  Petitioner's conviction for armed aggravated assault violated D.C. Code § 22-4502, which is a class A felony.  See Evans, 12 A.3d at 3 n.1; see also D.C. Code § 22-4502(a)(4) (2001) ("For purposes of imprisonment following revocation of release authorized by § 24-403.01(b)(7), the offenses defined by this section are Class A felonies."). Consequently, the Parole Commission could have imposed a total term of imprisonment of five years for Petitioner's violation of supervised release.  Instead, it only imposed a thirty-six month term of imprisonment followed by a twenty-four month term of supervised release.  Such terms are within those authorized by law.

In addition, "[t]he maximum authorized length of such further term of supervised release shall be the original maximum term of supervised release that the sentencing court was authorized to impose for the offense of conviction, less the term of imprisonment imposed by the [Parole Commission] upon revocation of supervised release."  28 C.F.R. § 2.219(b)(2). The Parole Commission's terms also conform to this requirement. Petitioner's conviction for aggravated assault while armed in

violation of D.C. Code §§ 22-404.01, -4502 (2001), carried a maximum prison sentence of thirty years. See D.C. Code § 22-4502. Because the maximum sentence for Petitioner's conviction was more than twenty-five years, the maximum authorized term of supervised release was five years. See D.C. Code § 24-403.01(b)(2)(A) (2001); see also 28 C.F.R. § 2.219(b)(2)(i).

Here, the Parole Commission revoked Petitioner's supervised release and ordered that he serve thirty-six months in prison followed by twenty-four months on supervised release. The Parole Commission's decision imposes both prison time and a new period of supervised release for a total combined sentence of sixty months, which complies with the District of Columbia Code and the Parole Commission's regulations. See id.; see also D.C. Code § 24-403.01 (2001); 28 C.F.R. § 2.219. Based on the foregoing, the Parole Commission acted within its statutory authority when it imposed a thirty-six month sentence of imprisonment followed by a twenty-four month term of supervised release for Petitioner's violation of his supervised release, and the Petition will be denied. See, e.g., Brice v. U.S. Parole Comm'n, No. 10-hc-2270, 2011 WL 2746127, *2 (W.D.N.C. July 13, 2011) (holding that Parole Commission acted within its authority in issuing terms of imprisonment and supervised release after supervised release was revoked because the terms

complied with D.C. Code. § 24-403.01(b)(7)).

Petitioner's argument that the Parole Commission could only impose fifteen to sixteen months of imprisonment or supervised release at revocation also lacks merit. In support of his argument, Petitioner cites D.C. Code § 24-221.03(a), entitled "Jail time; parole," which provides:

> Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody, or on parole in accordance with § 24-406 [outlining procedure after revocation of parole], as a result of the offense for which the sentence was imposed. When entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody, or on parole in accordance with § 24-406, as a result of the offense for which sentence was imposed.

Petitioner cites this statute for the proposition that "a parolee is now given credit for all time served on supervised release upon revocation when that person's sentence is recomputed." ECF No. 1 at 7. That statute, however, would only apply to revocations of parole, not supervised release, which is explicitly governed by D.C. Code § 24-403.01. See Taylor v. Norton, No. 05-cv-1634, 2006 WL 1071517, at *1 n.5 (D.D.C. April 21, 2006) ("Petitioner is serving a term of supervised release, not parole. All of his arguments regarding parole, parole revocation . . . credit for "street time" and the Parole Commission's authority with respect District of Columbia

12

parolees are irrelevant as they do not apply to him.").

Finally, to the extent that Petitioner's reference to the Ex Post Facto Clause in the Petition could be seen to raise an Ex Post Facto Clause argument, there would be no merit to such an argument. The Ex Post Facto Clause prohibits retroactive application of a law which increases the punishment for a crime that an individual has already committed. Collins v. Youngblood, 497 U.S. 37, 42 (1990)). See U.S. Const. Art. I, § 9 ("No . . . ex post facto Law shall be passed."). "One function of the Ex Post Facto Clause is to bar enactments, which by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000) (citations omitted). To be successful, a petitioner first must show that there has been a change in law or policy that was given retrospective effect. Shaffer v. Meyers, 163 F. App'x. 111, 113 (3d Cir. 2006).

Here, Petitioner has failed to meet his initial burden. Petitioner has not demonstrated that D.C. Code § 24-403.01, the relevant statutory provision that governs supervised release and the revocation of supervised release for D.C. Code offenders, has been retrospectively applied to him by the Parole Commission. The applicable provisions of section 24-403.01 were enacted well before the Petitioner's offense in 2007 and

subsequent supervised release revocation in 2016, and the Court can discern no retroactive application of them to Petitioner. The Petition will be denied.

**IV. CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." "'[A] court of the District [of Columbia] is a state court for purposes of section 2253(c),' and thus 'a prisoner arrested or convicted pursuant to process or judgment of the courts of the District must obtain a COA.'" Wilson v. U.S. Parole Comm'n, 652 F.3d 348, 351-52 (3d Cir. 2011) (quoting Madley v. U.S. Parole Comm'n, 278 F.3d 1306, 1308, 1310 (D.C. Cir. 2002)).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, no certificate of appealability shall issue.

**V. CONCLUSION**

For the above reasons, the Petition for Writ of Habeas Corpus pursuant to § 2241, ECF No. 1, will be denied and a certificate of appealability shall not issue.  An appropriate Order follows.


Dated: October 29, 2018            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

15